Good morning, Your Honors. I'm John Ward. I'm here for Appellant Edwin Burns. I'd like to hold a couple of minutes just in case I need them at the end, so I'll stop at eight minutes. Okay. I take a pretty simplistic view of this case, with some temptation, but I see it this way. I see that the six-month barrier imposed by Evans v. Chavez is a matter of federal law. In other words, the gap tolling that exceeds six months apparently is not pending for purposes of Section 2244. For those petitions where the up-the-ladder time is less than six months, it's controlled by California law. To me, California law, particularly in the area of non-capital habeas, is very, very clear. It's analogous to federal habeas time limits, well, before when there was, at first, nothing, and then there was only lychees. There is no California case that I can find that states that six months is too long, per se. Well, you've got Chaffer, right? Chaffer II? Chaffer II. So we're not ‑‑ I mean, what you're saying might have been relevant to the Chaffer panel, but they decided what they decided. So clearly we can't exceed the time period there, can we? Well, but, fortunately, we don't have to. Here we have 141 days. They have 233. But their 233, or whatever the number was, was actually two smaller pieces. And it spoke pretty clearly about saying either of those gaps was too long. Well, see, that's where I respectfully beg to disagree. I think it's insolubly ‑‑ the word comes to me from Doyle, and it's gone out of my head, but it's insolubly ambiguous. What does it mean? It says that delays of this kind clearly are not within the 30 to 60 days envisioned. You know, where they got that, the good Lord knows, frankly. I mean, because California has never said the 30 to 60 days are talismanic. Moreover, in Waldrop, I believe this Court said that the rule was an aggregate of six months. Well, Chaffer 1, which had the certification order, did refer to what the panel there said. We seek certification part so the California Supreme Court can assess whether the two filing delays in this case, each more than 100 days in length, qualify substantial delays under California law. Now, California Supreme Court declined it, but it does tell us what the Chaffer Court was thinking about. It was thinking not of delay in the aggregate, but delay each of the individual periods of delay. But the statute says that it's told while postconviction proceedings are properly before the state courts. And it doesn't seem to me logically to make any difference whether there's one or two. And California has an anomalous system. And there's a sort of a kind of a schizophrenia in the sense, on the one hand, we allow them to have it for reasons of federalism, I suppose, and various things. And on the other hand, there's this notion that because most states deal with 30 to 60 day periods, well, then there's something suspect about the fact that California does it. Well, the statute actually uses slightly different language. It speaks of a properly filed application for postconviction or other collateral review is pending. Right. And, in fact, there was no such application pending on behalf of your client during the gap periods. Yeah. And subsequently, the Supreme Court said, well, if it's a continuous process, if you're going in the same direction and so forth, we'll treat that as being told. But the Supreme Court then says in Chavez that the caveat there is that the assumption behind the Federal statute is that California's different system isn't so different. And then they went on to say, if we're wrong in our understanding of California law, we invite the California Supreme Court to tell us, which is probably why the Chauffeur Panel certified a question. So what do we make of the fact the California Supreme Court thought there was nothing that had to respond? Well, they did tell. I mean, I think what they did is they pointed us to a whole body of law going back very, very many years that says that substantial delay, generally speaking, is a period of, I think the case that came closest to me was nine months. Well, even though we're talking about California law, the EDPA statute of limitations is Federal law, and we will consider what happens in California. But isn't it, in the end, a matter of Federal law what we determine to be an unreasonable period? Well, at a certain point, I mean, Chavez says that six months is clearly an unreasonable period. So Federal law, it's clearly a question of Federal law, what does pending mean? On the other hand, it also appears that the states are free to create their own system of post-conviction. To a certain degree, isn't that what we are told? Yes, but there's the degree appears to be taken from what California does. And so there's a certain degree of tension between these two points. But I don't think that where the period involved is less than six months, it need to be resolved in the blanket way that I suspect that this Court attempted to do so or that the Chaffer Court did. That if the California courts are perfectly fine with this. The other thing I think that's important to point out is not just sort of this general view of California law, but what did they do in this case? They let him out, the California Supreme Court let him out with a postcard denial. Now, I know that that's no longer a bellwether. We can't simply rely on it and say, okay, timely, because he got a postcard denial. However, it's not without significance. In Reeve Robbins, the California Supreme Court said quite clearly that when procedural bars and timeliness bars were raised, and they were dealing with, I think, a capital case with lots of different subpetitions. And they said, in those cases, our order disposing of a habeas corpus petition does not impose the proposed bar, i.e., timeliness, or bars as to that claim or subclaim. This signifies that we have considered Respondent's assertion and have determined that the claim or subclaim is not barred on the cited ground or grounds. So that's the case. Kennedy. Hasn't the Supreme Court said in Carey, that doesn't answer the question of whether it was timely? Well, it's – Carey or – or – Well, they repeat it in Chaffetz. Yeah. But I think Carey started this. Yeah. But it doesn't – for the life of me, I can't see why that is so. However – I may not be able to see why it's so either, but I take orders. I know. But they also said, you know, it's not chopped liver. It's got some significance. It just doesn't have this bellwether significance. It doesn't resolve the question of timeliness. But, you know, I think it's a significant factor. I also think it's a significant factor that the difference between this case and Chaffer is that in Chaffer, the Petitioner made no attempt at all to explain what's up, why he was late. Whereas in this – I see I'm not going to have this extra time, but it doesn't matter. Well, you have a minute if you want to stop now. Okay. No. In Chaffer, the fellow made no attempt to make an explanation. Here, he did this typewriter thing, which to me makes sense. I mean, I think that typewritten stuff is always taken more seriously. I think it's not a frivolous reason. And secondly, he said, I don't have any schooling. And in California, that always carried some weight, not to extend the deadline, but to serve as an explanation. And there I leave it. Thank you very much. Okay. Thank you. May it please the Court. My name is Katherine Chapman. I represent the State of California, the warden in this matter. I'd like to first address a pollen's arguments regarding a postcard denial in California. In fact, you cannot read anything out of a postcard denial in California. I would direct this Court's attention to the United States Supreme Court decision in Coleman v. Thompson, in which the Court recognized that an unexplained order is not intended to say anything. If you look at the footnote that Appellant refers to in Robbins, that's footnote 34, in which they discuss their order practice, you'll notice that what they actually say is, if respondent asserts a procedural bar and we don't impose it, that means we've considered it and rejected it. In most of these cases, the respondent has not been asked for a response when a postcard denial issues, and the great majority of them. And so has had no opportunity to assert or explain a procedural bar. So for most of these postcard denials, the absence of a procedural bar does not mean what Appellant is trying to say it means. And, of course, even so, even if the Court declines to assert a procedural bar, that doesn't necessarily resolve the initial question. As the Court's questions have pointed out, the question of pending during the gaps between state filings is indeed a matter of federal law. That was recognized by this Court in Waldron. It was made abundantly clear in Evans v. Chavez. And the fact is that the United States Supreme Court is allowing tolling during these gaps in California purely as a matter of federal law because, in fact, nothing is pending as a matter of state law given that these courts have original jurisdiction. Since they are permitting statutory tolling during those times, they're free to limit it in whatever way they see fit. And in order to provide uniform application of the federal statute, they have said, we always assumed and we continue to assume that California's law will not lead to filing delays greater than other states. Do you take anything or what, if anything, do you take from the decision of the California Supreme Court to decline to answer the certified questions? What I take from that is I noticed that the certified question expressly said that are we correct to assume, as Chavez suggests, that 30 to 60 days is the prevailing period that's considered timely? So the question incorporated that understanding. That being the case, I would say the California Supreme Court's silence on that point, as far as taking certification at least, must mean they agree. It's not like prescribed denial. We can derive meaning from their denial of our certification the way we can't derive any meaning from it. Why is California's Supreme Court's silence, in one instance, any more significant than silence in another instance? Well, they weren't entirely silent. I mean, they pointed to their rule on certification that says, if there is existing precedent, maybe if it would not make a difference for us to weigh in, we won't. Well, there's an abundance of precedent out there, and there was at the time of this question from the United States Supreme Court regarding their understanding, from the federal courts, and most particularly from the California Supreme Court's own decisions in which they very deliberately set out to explain these concepts in Clark and Robbins. So it's not so much silence as it is a reference to what's already out there to inform this decision. Well, but you can't really look at the question and then say a point from what they said and say this must be an endorsement of the way the Chaffer panel phrased the question. My guess is that the reason California didn't accept certification is that it makes no difference for purposes of California law. To them, it doesn't really matter whether it's a denial on the merits or not. It's a denialist denial. And the only reason it matters is for purposes of federal law. So essentially we would be asking them to devote or we were asking them to devote scarce resources. And as we know, the California Supreme Court is very thinly stretched to essentially solve our problem. I mean, I don't have any information, but that would be my inference from what happened there. But it doesn't leave us to a situation that we can't just look at time period alone. We have to look at time period plus the reason for the delay. I mean, for example, if there was a time period and you agree that if he's on ad seg for a period of time, that would be subject to tolling, right? I do not agree with that. How about a lockdown? Perhaps a lockdown if he pleads with particularity when he was in lockdown, how it affected him from proceeding. I'm sorry? How it affected him from proceeding. And keep in mind here, we're not talking about... Well, he can't get out of his cell to access the library or to... But why does he need to go to the library? He's going from one court to the next. He should be presenting the same claims. He shouldn't be presenting new claims. If so, he needs to explain that. So I think even if the person is on lockdown or his library access is restricted, these are the vicissitudes of prison life, and you do have a period of time of 60 days in which to deal with those things. He's not filing a first initial petition. He's just repackaging his petition to take to another court. And the reason I don't agree about administrative segregation is that's a matter within his control. If he behaves himself, he doesn't end up in administrative segregation. Well, it depends. People get put in that sometimes for their own protection. True. True. And if so... Or, you know, he might be injured in a fight which maybe is not his fault, and then he's in, what do they call it, the hospital? I mean, they have a section of the prison, a medical unit, right? And if he is there, even if he's not injured, I mean, even if he's well enough to type or write, but if he's away from his cell because he's in the medical unit, that would count, right? Now, why doesn't the typewriter, the absence of a typewriter, count? A typewriter is a luxury. It's not required to file a state habeas petition. If you look at the form, the standard form that's in use in every level of court, like if you look at the first page of the third supplemental excerpt of record, that's his California Supreme Court petition, right on the front, it says, to fill this out legibly in ink or typewrite. So you can handwrite it. There's no downside to handwriting. It's clearly permitted by California law and by the form. I think it's like, I think this happened in Waldrop, where a prisoner relies on another prisoner who's serving as his jailhouse logger. He does so at his own peril. If a prisoner wants to have the luxury of typewriting his petitions, you know, and he's ordering it from a vendor, and the vendor's trying to deliver it to a prison, well, he acts at his own peril, and there being some significant delays there. You know, if you were in a system where you were going from one level to the next, there's somebody you could ask. You could move for an extension of time. We get them all the time for different things. And so maybe you could say, can I get an extension of time for 60 days so I can acquire this typewriter? You don't have that here. So since we don't have anybody in a position to grant an extension, by what standard do we judge the request? Is it like, do we judge it as if we would if we were receiving a request for an extension of time? Do we judge it like it has to be extraordinary, such as required for equitable tolling? What kind of standard would you apply to judge the reasonableness of the explanation? Well, you take California's standard. You have to act with due diligence in pursuing your claims, and you have to file them as promptly as the circumstances permit. And you say, is that what he's doing? And if he's waiting on a typewriter, I submit that, no, that's not what he's doing. And, you know, again, I would reiterate that Mr. Burns, as he should have been and as most prisoners are doing, was simply filing the same claims in the California Supreme Court that he had already filed in the two previous lower courts. So he didn't need the typewriter. Nothing in California law required him to have a typewriter. He did not file his petition as promptly as the circumstances allowed. Okay. Thank you. Thank you. You have about half a minute left for about a roundabout of four minutes, if you wish to take it. No. All right. Thank you very much. Cajun Sargi will stand submitted.
judges: Kozinski, Roth, Clifton